IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE STATE OF ALABAMA, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 1:18-cv-00009 (TFH)<br>) |
| PHH MORTGAGE CORPORATION, | )<br>) |
| Defendant. | )<br>)<br>) |

**CONSENT JUDGMENT**

WHEREAS, Plaintiffs, the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming, the Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia, and the District of Columbia (collectively, the "Attorneys General" or "Plaintiffs") filed their Complaint [ECF No. 1] on January 3, 2018, alleging that PHH Mortgage Corporation ("PHH," "Defendant" or "Servicer") either itself or through its affiliates or subsidiaries violated, among other laws, the Unfair and Deceptive Acts and Practices laws of the Plaintiffs' States and the Consumer Financial Protection Act of 2010;

WHEREAS, the Parties have agreed to resolve their claims without the need for litigation;

WHEREAS, the Attorneys General and Defendant enter into this Consent Judgment with the understanding that the State Mortgage Regulators have contemporaneously entered into a Settlement Agreement and Consent Order with PHH (the "State Mortgage Regulators' Consent Order") in coordination with this Consent Judgment in order to resolve findings identified in the course of the Multi-State Examination of Defendant PHH.

WHEREAS, Defendant, by its attorneys, have consented to entry of this Consent Judgment without trial or adjudication of any issue of fact or law and to waive any appeal if the Consent Judgment is entered as submitted by the parties;

WHEREAS, Defendant, by entering into this Consent Judgment, does not admit any allegations of wrongdoing or violations of applicable laws, regulations, or rules governing the conduct and operation of its servicing business, other than those facts of the Complaint deemed necessary to the jurisdiction of this Court;

WHEREAS, the intention of the Attorneys General in effecting this settlement is to remediate harms allegedly resulting from the alleged unlawful conduct of the Defendant, either itself or through its affiliates or subsidiaries;

AND WHEREAS, Defendant has agreed to waive service of the Complaint and Summons and hereby acknowledge the same;

NOW THEREFORE, without trial or adjudication of issues of fact or law, without this Consent Judgment constituting evidence against Defendant except as otherwise noted, and upon consent of Defendant, the Court finds that there is good and sufficient cause to enter this Consent Judgment, and that it is therefore ORDERED, ADJUDGED, AND DECREED:

## I.   JURISDICTION

1.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367 and 12 U.S.C. §§ 5552 and 5565, and over Defendant. The Complaint states a claim upon which relief may be granted against Defendant. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) and 12 U.S.C. § 5564(f).

## II.   SERVICING STANDARDS

2.   Defendant shall comply with the Servicing Standards, attached hereto as Exhibit A, in accordance with their terms.

3.   Defendant shall implement the Servicing Standards no later than January 1, 2018 or as otherwise stated in Exhibit A, or the date on which this Consent Judgment has been entered by the Court, whichever is later ("Implementation Date").

## III.   FINANCIAL TERMS

4.   *Settlement Amount.* Defendant shall pay forty-five million, two hundred and seventy-nine thousand, seven hundred and twenty-five dollars ($45,279,725), which shall be known as the "Settlement Amount," and which shall be distributed in the manner and for the purposes specified in this Consent Judgment and in Exhibit B.

5.   The Settlement Amount is comprised of: (a) Payments to Foreclosed and Referred Borrowers; (b) Attorneys' Fees and Costs payable to the Investigating Attorneys General; and (c) Administrative Penalty payable to the State Mortgage Regulators further defined in Paragraph 8.

6.   *Payments to Foreclosed and Referred Borrowers.* In accordance with written instructions from the Executive Committee, established in Paragraph 12, and for the purposes set forth in the State Mortgage Regulators' Consent Order and Exhibit B of this Consent Judgment, Defendant shall transfer to the Settlement Administrator appointed under Exhibit B thirty-one

million, four hundred and fifty-six thousand, two hundred and ten dollars ($31,456,210) (the "Borrower Payment Amount") to enable the Settlement Administrator to provide cash payments to (a) borrowers whose loans were serviced by PHH at the time the foreclosure was completed and whose homes were sold or taken in foreclosure between and including January 1, 2009, and December 31, 2012, or (b) all other borrowers whose loans were serviced by PHH and referred to foreclosure during that same time period and not accounted for in (a) above; who submit claims allegedly arising from the Covered Conduct (as that term is defined in Exhibit C hereto); and who otherwise meet criteria set forth by the Executive Committee; and to pay the reasonable costs and expenses of the Settlement Administrator, including taxes and fees for tax counsel, if any. Defendant shall also pay or cause to be paid any additional amounts necessary to pay claims, if any, of borrowers whose data is provided to the Settlement Administrator by Defendant after Defendant warrants that the data is complete and accurate pursuant to Paragraph 3 of Exhibit B. The Borrower Payment Amount and any other funds provided to the Settlement Administrator for these purposes shall be administered in accordance with the terms set forth in Exhibit B. Defendant shall pay the Borrower Payment Amount by electronic funds transfer, pursuant to written instructions to be provided by the Executive Committee into an account established in accordance with this Paragraph 6, within seven (7) days of receiving notice that the account has been established or within seven (7) days of the Date of Entry of this Consent Judgment, whichever is later. After Defendant has made the required payments, Defendant shall no longer have any property right, title, interest or other legal claim in any funds. The account established by this Paragraph 6 is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation Section 1.468B-1 of the U.S. Internal Revenue Code of 1986, as amended.

7. *Attorneys' Fees and Costs.* Defendant shall pay to the Investigating Attorneys General a total of five million dollars ($5,000,000), to be used for attorney's fees, investigative costs and fees, future expenditures relating to the investigation and prosecution of cases involving fraud, unfair and deceptive acts and practices, and other illegal conduct related to financial services or state consumer protection laws to the extent practicable or as otherwise agreed to by law. The $5,000,000 shall be distributed in accordance with Exhibit D, and such payments shall be made to the State Attorneys General of Arizona, California, Colorado, Connecticut, Florida, Illinois, Iowa, Nevada, North Carolina, Ohio, Texas, and Washington. Payment shall be made within ten (10) calendar days of Defendant's receipt of written payment processing instructions from each Investigating Attorney General.

8. *Administrative Penalty.* As required by the State Mortgage Regulators' Consent Order, Defendant shall pay eight million, eight hundred and twenty-three thousand, five hundred and fifteen dollars ($8,823,515) as an administrative penalty. Payment shall be made in accordance with the terms of the State Mortgage Regulators' Consent Order.

### IV. SERVICING STANDARDS COMPLIANCE TESTING AND REPORTING

9. *Internal and/or External Compliance Testing.* Servicer shall conduct transactional testing and compliance/controls testing, either internally and/or by retaining the services of a third-party firm, to assess Servicer's compliance with the Servicing Standards attached as Exhibit A to this Consent Judgment. The testing shall be conducted in the ordinary course of Servicer's business consistent with industry standards and Servicer's internal testing schedule, which shall be based on an assessment of high risk areas and emerging trends.

10. *PHH Internal Audit.* PHH shall ensure that the Internal Audit Department of its parent company conducts audits of Servicer's servicing functions, including Servicer's

compliance with the Servicing Standards. Servicer shall include the Servicing Standards in its annual risk assessment, which forms the basis for its annual audit plan, and shall conduct audits in accordance with its annual risk assessment and annual audit plan.

11. *Corrective Action Activity.* In the event any deficiencies are identified through testing or audits, Servicer shall perform a root cause analysis and determine whether corrective action activity, including a plan for remediation of any consumer harm, is necessary.

12. *Executive Committee.* An executive committee comprised of representatives of the government signatories to this Consent Judgment and the State Mortgage Regulators' Consent Order ("Executive Committee") shall serve as the point of contact between Servicer and the government signatories and shall receive reports and communications from Servicer.

13. *Reports.* Servicer shall submit to the State Attorneys General of Executive Committee on a quarterly basis (1) any PHH Internal Audit reports conducted on Servicer's compliance with the Servicing Standards during the preceding quarter; (2) any internal or external transactional testing results and compliance/controls testing results conducted; and (3) any root-cause analysis or plan for corrective action activity developed or performed by Servicer during the preceding quarter (collectively, "Reports"). Servicer shall submit Reports on the 20th day of the month following the end of each quarter, beginning on the 20th day of the month following the end of the first full quarter of 2018.

14. *Confidentiality.* Servicer does not waive any privileges it may otherwise assert by submitting Reports pursuant to this section. Specifically, Servicer shall designate as "CONFIDENTIAL" that portion of any report, supervisory and any supporting information, document, or portion of a document or other tangible thing provided by Servicer to the State Attorneys General of Executive Committee, any member thereof, or to any government signatory

that Servicer believes contains a trade secret or confidential research, development, or commercial information subject to protection under applicable state or federal laws (collectively, "Confidential Information"). The following provisions shall apply to the treatment of Confidential Information:

    a.    Except as provided by these provisions, all Confidential Information shall be identified as such in a document executed by a representative of Servicer prior to or simultaneous with furnishing of a Report and shall cite the basis for the privilege asserted as to each identified portion.

    b.    The Executive Committee, any member of the Executive Committee, and any government signatory receiving Reports agree to protect Confidential Information to the extent permitted by law, except as needed to support a public enforcement action.

    c.    A government signatory who is not a member of the Executive Committee may request and obtain Reports provided that it (i) agrees to adhere to the provisions herein; and (ii) participates in a meet and confer with the Executive Committee to discuss its request.

    d.    To the extent that the Executive Committee, any Member of the Executive Committee, or any government signatory receives a subpoena or court order or other request for production of Confidential Information, the government signatory shall, unless prohibited under applicable law, notify Servicer of such request and if the government signatory or participating state is required to disclose Confidential Information pursuant to state or federal law, advise Servicer of the disclosure as soon as is practicable to enable Servicer to seek a protective order or stay of production of documents.

e. The confidentiality provisions of Paragraph 14 are binding on the Parties only to the extent that it does not violate any court order, constitutional provision, or statute prohibiting such confidentiality.

15. *Auditing Period.* The auditing and reporting period shall be for three years, commencing on January 1, 2018.

## V. ENFORCEMENT

16. Prior to initiating an action to enforce this Consent Judgment, a government signatory shall: (1) provide written notice to the Executive Committee and Servicer of the basis for the potential action and a description of its allegations; (2) allow Servicer 15 days to respond to such notice in writing; and (3) participate in a meet and confer with Servicer if so requested during the 15-day period.

17. This Consent Judgment shall in no way preclude the State Attorneys General from immediately bringing an action without notice against Servicer if necessary to prevent immediate and irreparable harm and protect the health, safety, and welfare of the public.

18. This Court retains jurisdiction to enforce the terms of this Consent Judgment. The Parties may jointly seek to modify the terms of this Consent Judgment, subject to the approval of this Court. This Consent Judgment may be modified only by order of this Court.

19. This Consent Judgment shall in no way preclude the State Mortgage Regulators from exercising their examination or investigative authority authorized under the laws of the participating states. Further, nothing in this Consent Judgment shall impede a state regulator's authority to seek the suspension or revocation of a license to protect the general public of that state, or the process or venue used to that end.

## VI. RELEASE

20. The Attorneys General and Defendant have agreed, in consideration for the terms provided herein, for the release of certain claims and remedies, as provided in the State Release, attached hereto as Exhibit C. The Attorneys General and Defendant have also agreed that certain claims and remedies are not released, as provided in Part III of Exhibit C. The releases contained in Exhibit C shall become effective upon payment of the Settlement Amount by Defendant.

## VII. OTHER TERMS

21. Any Attorney General may withdraw from the Consent Judgment and declare it null and void with respect to that party if PHH fails to make any payment required under this Consent Judgment and such non-payment is not cured within thirty days of written notice by the withdrawing Attorney General.

22. The Effective Date of this Consent Judgment shall be the date on which the Consent Judgment has been entered by the Court and has become final and non-appealable. An order entering the Consent Judgment shall be deemed final and non-appealable for this purpose if there is no party with a right to appeal the order on the day it is entered.

23. The Servicing Standards attached as Exhibit A shall remain in full force and effect for three years from the Implementation Date, at which time the Defendant's obligations to comply with the Servicing Standards shall expire.

24. This Consent Judgment (including the Servicing Standards attached as Exhibit A) is binding on the signatory Attorneys General and PHH Mortgage Corporation. This Consent Judgment (including the Servicing Standards attached as Exhibit A) does not bind any successors or assigns, future purchasers of all or substantially all of the assets of PHH Corporation or PHH

Mortgage Corporation or successors-in-interest of PHH Corporation or PHH Mortgage Corporation. Notwithstanding the foregoing, (i) in the event of the consummation of the potential transaction that was publicly announced on February 27, 2018, whereby Ocwen Financial Corporation has agreed to acquire PHH Corporation, all loans serviced by PHH on the date such transaction is consummated shall remain subject to the terms of this Consent Judgment, including the Servicing Standards and the period of time set forth in Paragraph 23 of the Consent Judgment, regardless of the form of the transaction or the name of the surviving entity, unless and until such time as they are paid off or transferred to an unaffiliated third party; and (ii) in the event of the sale of Servicer's servicing or sub-servicing platform, Servicer will work with the government signatories to ensure an orderly transition of serviced loans to any new servicer or sub-servicer of such loans.

25. Nothing in this Consent Judgment shall relieve Defendant of its obligation to comply with applicable state and federal law.

26. The sum and substance of the parties' agreement and of this Consent Judgment are reflected herein and in the Exhibits attached hereto. In the event of a conflict between the terms of the Exhibits and Paragraphs 1-26 of this summary document, the terms of the Exhibits shall govern.

SO ORDERED this _10th_ day of _May_, 2018

_____
UNITED STATES DISTRICT JUDGE